No. 81-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

INTERMOUNTAIN TELEPHONE AND
POWER COMPANY,

Petitioner and Appellant,

vs.

DEPARTMENT OF PUBLIC SERVICE REGULATION,
MONTANA PUBLIC SERVICE COMMISSION,

Respondent and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Peterson, Schofield & Leckie, Billings, Montana
Kenneth D. Peterson argued, Billings, Montana

For Respondent:

Calvin K. Simshaw argued, Helena, Montana
Crowley Law Firm, Billings, Montana

Submitted: September 10, 1982

Decided: October 7, 1982

Filed: OCT 7 - 1982

_____
                              Clerk

Mr. Frank B. Morrison, Jr., delivered the Opinion of the Court.


On April 2, 1980, the Public Service Commission (PSC) conducted a public hearing in Custer, Montana, concerning the quality of telephone service being provided to the area by Intermountain Telephone and Power Company (Intermountain). The PSC issued a final order October 27, 1980, stating that the service was not "reasonably adequate." Intermountain petitioned the District Court of the Thirteenth Judicial District for judicial review of that order. The District Court affirmed the order of the PSC August 12, 1981, and issued a final judgment to that effect September 15, 1981. Intermountain now appeals that judgment. The District Court issued a stay of its judgment pending this appeal.

For a number of years, the PSC received complaints from the Custer area residents concerning the poor quality of telephone service provided by Intermountain. These complaints were communicated by PSC to Intermountain's management. Service did not improve. The complaints continued.

The PSC began a formal investigation, resulting in a public hearing in Custer on April 2, 1980. More than twenty Custer residents testified, along with Norman Mills, Intermountain's spokesman and a representative of Mountain Bell.

Testimony by the residents indicated that there were numerous problems with the telephone service. Ascertaining whether a phone worked or not was described as similar to playing Russian roulette. The weather affected the clarity of the connection. Incoming calls often did not ring. Wrong connections occurred. Long-distance service was sometimes non-existent for extended periods of time. Telephone

lines were draped over posts and on the ground in several instances. Repairs often took several days as there was no resident repairman in Custer.

In response, Norman Mills, owner of Intermountain, testified that fifty-seven miles of long-distance wire was the responsibility of Mountain Bell, not Intermountain and that Mountain Bell failed to relay messages concerning telephone problems until several days after they were received. His personal efforts, and those of Bell operators, to duplicate the problem of incoming calls not ringing through to subscribers, were unsuccessful. Some telephone wire was in need of replacement; however, no funds existed with which to replace it. The switchboard had been updated and was now capable of handling one hundred more calls than before. Further improvements would have to await more funds. He was noncommittal on the desire of the Custer residents to have a full-time serviceman located in Custer.

Mountain Bell representatives acknowledged joint responsibility for the fifty-seven miles of long-distance telephone wire. They testified that propositions to replace the wire had been conveyed to Intermountain, but that Intermountain refused to contribute its share of money to finance the repairs.

Following the hearing and prior to issuing its order, the PSC sent an engineer to Custer to test the phones. In his report, the engineer stated he "drove to the last subscriber's house on most of the rural lines and found the quality to be normal, and got a dial tone immediately and talked to the operator in Billings." Individuals reported to him that although their phone service was presently okay, it had been inadequate in the past. Two phone lines which

were "bad" were being repaired that day. Phone wires lying on the ground were being replaced by underground cable. The inside of the exchange was "not as neat as I have normally seen elsewhere; however, with further install- ations and rewiring in progress and in evidence, I would wish to inspect the premises at a later date after all reconstruction is complete."

On the basis of the above-discussed facts, the PSC issued its final order, which the District Court affirmed. In its appeal, Intermountain presents the following issues for review:

(1) Whether the order of the PSC was issued within the authority of the PSC?

(2) Whether the order was supported by the evidence on the record?

Section 69-3-102, MCA, gives the PSC supervision over and regulation of public utilities. Section 69-3-201, MCA, mandates that every public utility provide "reasonably adequate service and facilities." If the PSC is to super- vise utilities adequately, it must be able to ascertain whether or not a utility is providing "reasonably adequate service." Therefore, the PSC was within its authority when it issued the October 27, 1980, order stating that Intermountain was not providing "reasonably adequate service."

Twenty area residents testified regarding the poor quality of telephone service provided to them. One PSC engineer testified that he found good telephone service to exist the one day he was in the area. Clearly, the findings of the PSC regarding the quality of telephone service were supported by substantial credible evidence, as required by section 2-4-704(2)(e), MCA.

-4-

Montana has no statute providing for the licensing, franchising or certifying of telephone companies wherein those companies are granted an exclusive right to serve a certain area. There is also no exclusive property right under the Territorial Integrity Act of 1971, as that Act applies to suppliers of electrical service, not telephone service. Section 69-5-103, MCA.

Telephone service competition is basically free and open in Montana, except so far as telephone cooperatives are concerned. Section 35-18-105(2), MCA, prohibits telephone cooperatives from duplicating "reasonably adequate service" already in existence. But, if no "reasonably adequate service" is being provided, telephone cooperatives may provide service to that area.

The language in the order of the PSC stating "there exists no provision of Montana law that would prohibit another telephone company, whether private or cooperative, from providing telephone service to residents of the Custer area. . ." is merely dictum. Private telephone companies are free to compete at any time. Telephone cooperatives may compete when no "reasonably adequate service" is available.

The order of the PSC is affirmed.

Justice

We Concur:

Chief Justice

-5-

_Gene B. Daly_

_John C. Sheehy_

_Frank J. Haswell_

Justices

Justice Daniel J. Shea did not participate in this decision.